Argued and submitted November 2, 1989, the decision of the Court of Appeals affirmed and the order of the Workers' Compensation Board affirmed July 25, reconsideration denied September 24, 1991

In the Matter of the Compensation of
Ernest F. Erck, Claimant.

Ernest F. ERCK,
*Petitioner on Review,*

*v.*

BROWN OLDSMOBILE
and EBI Companies,
*Respondents on Review.*

(WCB No. 86-05134; CA A47689; SC S36203)

815 P2d 1251

Robert K. Udziela, Portland, argued the cause for petitioner on review. With him on the petition were Phil Goldsmith, Donald R. Wilson, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Randy G. Rice, Portland, argued the cause and filed the response for respondents on review.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen, and Fadeley, Justices.

CARSON, J.

---

** Linde, J., retired January 31, 1990.
*** Jones, J., resigned April 30, 1990.

## CARSON, J.

The issue in this workers' compensation case is how the Workers' Compensation Board (Board) must treat a referee's express credibility finding on review of the referee's order. The Court of Appeals, concluding that the Board's order was supported by substantial evidence, and otherwise was proper, affirmed the Board order reversing the referee's award of permanent total disability. *Erck v. Brown Oldsmobile*, 95 Or App 400, 768 P2d 946 (1989). We allowed review to address the requirements for a Board order that reverses an order of a referee, when the latter includes a credibility finding. We affirm the decision of the Court of Appeals.

*Background*

Claimant was 62 years old and had a ninth grade education at the time of the hearing before the referee. He had worked as an automobile body painter since 1947 — virtually his entire adult life. In 1984, claimant was diagnosed with isocyanate asthma, a form of pulmonary disease caused by exposure to certain chemicals in the automobile paint used in his work. He filed a claim for workers' compensation benefits. In 1985, a workers' compensation referee found that claimant was permanently partially disabled. At the time of the hearing in this case, claimant had not worked since leaving his job as an auto-body painter.

From February to October 1985, claimant received statutorily required "return-to-work" assistance from Orion Rehabilitation Service, Inc.[1] His case then was referred to Hetfield Associates, Inc., another provider of vocational rehabilitation services. Claimant testified that the vocational counselor at Hetfield did nothing to help him return to work. The counselor maintained that claimant did not cooperate in her efforts to provide vocational assistance, as claimant had no desire to return to work. After some effort to provide claimant with return-to-work assistance, and after several letters to him warning that his failure to cooperate would lead

---

[1] ORS 656.340(1) requires the employer/insurer to provide vocational assistance to an injured worker who is eligible for assistance in returning to work.

to termination of the assistance, his vocational assistance was discontinued in April 1986.[2]

Meanwhile, claimant's claim was closed by a determination order in February 1986, awarding 30 percent (96 degrees) unscheduled permanent partial disability. Claimant requested a hearing on the extent of his disability, asserting that he was permanently totally disabled. ORS 656.268(9) (formerly 656.268(6)). The referee considered the hearing testimony both of claimant and of the Hetfield vocational counselor regarding the extent of claimant's cooperation in the vocational assistance.[3] The referee concluded:

> "Given the impact on claimant of his substantial loss of pulmonary function and his ouster from his only known trade and skill, as well as his lack of education and training, it would appear that he participated in vocational rehabilitation efforts about as far as he was able.
>
> "It is my observation that claimant was an honest, credible witness in his own behalf, and I conclude that the lack of motivation is an unfair charge * * *."

The referee issued an opinion and order concluding that claimant was permanently totally disabled. The insurer requested Board review of the referee's order. The Board reversed the referee's order and awarded claimant 45 percent (144 degrees) permanent partial disability in addition to the 30 percent awarded by the 1986 determination order. The Board explained:

---

[2] OAR 436-120-045 (formerly numbered 436-120-090) provides that the eligibility of a worker for vocational assistance ends when (among other things) the "worker has failed, after written warning, to cooperate in the development of a return-to-work plan."

[3] ORS 656.206(3) provides that the "worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment." OAR 436-30-055(3)(b) provides that in order for a worker to be determined permanently totally disabled, the worker must "[s]how a willingness to seek regular work at a suitable and gainful occupation and make reasonable efforts to find such work, or *actively participate in a vocational assistance program* unless the medical condition makes such efforts futile." (Emphasis added.) Non-cooperation in vocational rehabilitation efforts thus may establish an unwillingness to seek employment, or a lack of reasonable efforts to obtain employment, for purposes of ORS 656.206(3), which consequently will preclude a finding of permanent total disability. *See Taylor v. SAIF,* 67 Or App 193, 196, 677 P2d 756 (1984); *Willamette Poultry v. Wilson,* 60 Or App 755, 761, 654 P2d 1154 (1982), *rev den* 294 Or 569 (1983) (illustrating application of the rule).

"We disagree with the Referee's analysis. Claimant's treating doctor indicated that he was capable of light work on a full-time basis. The vocational counselor who attempted to help him opined that he was employable. Although there is evidence that claimant is reserved and noncommunicative, there is no indication that these difficulties were so severe as to excuse claimant's failure to maintain contact with the vocational counselor. He had no apparent difficulty communicating with his doctors or at the hearing. We conclude that claimant, in essence, refused vocational assistance and that he has failed to establish that he is willing to seek regular gainful employment or that he has made reasonable efforts to obtain such employment. ORS 656.206(3). He, therefore, is not entitled to an award of permanent total disability."

In upholding the Board's order, the Court of Appeals concluded: "The Board's order is sufficient for review, there is substantial evidence to support its findings, and its reasoning connects those findings to the conclusion." *Erck v. Brown Oldsmobile, supra,* 95 Or App at 401.

*The Claims Process*

A worker's claim for benefits under the Workers' Compensation Law potentially is subject to several levels of review. The injured worker first must give written "notice of an accident resulting in an injury" to the employer. ORS 656.265. This is treated as notice of a claim. The employer or its insurer must either accept or deny the claim within the statutory time period (60 days at the time the claim was filed in this case). ORS 656.262(6). If the claim is denied, the worker may request a hearing on the denial within 60 days after notice of the denial is mailed. ORS 656.262(8); 656.319; 656.283(3). The referee who presides over the hearing is required to issue an order deciding the matter within 30 days of the hearing. ORS 656.289(1). Either party may then request Board review of the referee's order within 30 days. ORS 656.289(3).

Review by the Board is based upon the record developed before the referee and oral or written argument by the parties. ORS 656.295(5). "The board may affirm, reverse, modify or supplement the order of the referee and make such disposition of the case as it determines to be appropriate." ORS 656.295(6). That is, the Board reviews *de novo. See*

*Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971) (description of this scope of review as *de novo*). Either party then may request judicial review of the Board's order by the Court of Appeals, ORS 656.298(1), which review is "on the entire record forwarded by the board." ORS 656.298(6). The Court of Appeals reviews the Board order under the standards set forth in ORS 183.482(7) and (8),[4] part of which includes a review to determine whether the Board erroneously interpreted a provision of law and whether the Board's order is supported by "substantial evidence in the record." *Id.* Following a decision by the Court of Appeals, either party may petition this court for review of the Court of Appeals' decision. ORS 2.520.

The point of the recitation above is that a worker's claim for benefits may be evaluated as many as five times; the first three (the employer/insurer, the referee, and the Board) may include factfinding,[5] while the last two (the Court of Appeals and this court) are reviews of legal issues under the standards set forth in ORS 183.482(7) and (8).

---

[4] ORS 183.482 provides, in part:

"(7) Review of a contested case shall be confined to the record, the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion. * * *

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

[5] Under circumstances not here relevant, the Board may receive additional evidence. ORS 656.295(5).

*Claimant's Position*

Claimant does not contend that a referee must in all cases make credibility findings. Rather, he argues that when a referee does make express findings regarding a witness's credibility (as was the case here), the Board either must adopt those findings or explain why it departed from them. He argues that failure to do so constitutes an erroneous interpretation of a provision of law, requiring that the Court of Appeals remand the case under ORS 183.482(8)(a)(B). Alternatively, he argues that the Court of Appeals "misapplied the substantial evidence rule" when it affirmed the Board order. *See* ORS 183.482(8)(c).

Under the provisions of ORS 183.482(8) relevant to this case, the Court of Appeals (1) may reverse or remand a Board order if the Board has erroneously interpreted a provision of law, and (2) shall reverse the Board order if it is not supported by substantial evidence in the record. Claimant argues that the Board's failure to explain its "rejection" of the referee's credibility findings requires reversal and remand under either of the foregoing provisions. For the reasons discussed below, we do not believe the statutory scheme for Board review of a referee's decision contains such a requirement.

*Erroneous Interpretation of a Provision of Law*

The crux of claimant's first argument is that our cases relating to the deference to be given a factfinder upon review constitute a "provision of law," ORS 183.482(8)(a), that requires the Board to justify its rejection of a referee's explicit credibility findings. To support this position, claimant relies on cases from this court, from the Court of Appeals, and from the federal courts, all stating that a factfinder's credibility assessments are to be given deference upon review.

■ Claimant is correct in his argument that on *de novo* review, a reviewing entity normally gives deference to findings made below, especially when they relate to witness credibility. For example, in *Ryf v. Hoffman Construction Co.,* 254 Or 624, 631, 459 P2d 991 (1969), this court — on *de novo* review of a workers' compensation award — stated: "[W]e * * * have to give some weight to the fact that the Hearing Officer, and he alone, has the opportunity to observe the

claimant and other witnesses, a factor which we have regarded as highly significant in reviewing other cases on appeal." *See also Haines Com'l Equip. Co. v. Butler,* 268 Or 660, 664, 522 P2d 472 (1974) ("we accord great weight to [a trial court's findings of fact] when, as in this case, the testimony was conflicting"); *Bragger v. Oregon Trail Savings,* 275 Or 219, 221, 550 P2d 421 (1976) ("[t]he trial judge is in a much better position to assess the credibility of the witnesses than is this court and his conclusion * * * is entitled to considerable weight").

As claimant notes, prior to 1987, the Court of Appeals reviewed Board orders *de novo,* and it rarely (if ever) reversed the Board's adoption of a referee's finding on credibility without an explanation. *See, e.g., Coastal Farm Supply v. Hultberg,* 84 Or App 282, 285, 734 P2d 1 (1987) ("we generally defer to the referee's determination of credibility, when it is based on the referee's opportunity to observe the witnesses").

■ We agree that on *de novo* review, it is good practice for an agency or court to give weight to the factfinder's credibility assessments. However, the issue is not whether such practice is commendable, but whether it is statutorily mandated. Nowhere in ORS 656.298(6) (incorporating the ORS 183.482(7) and (8) standard of review) do we find a *requirement* that the Board explain its conclusions that are contrary to a referee's credibility determination. The Board's statutory charge is to "affirm, reverse, modify or supplement the order of the referee and make such disposition of the case as it determines to be appropriate." ORS 656.295(6).[6] The issue on judicial review under ORS 183.482(8)(a) is whether the Board's order (regardless of what the referee's order

---

[6] In response to this court's questions, claimant argued that the Board was a "reviewing" agency, rather than a "deciding" agency. We disagree. A request for a hearing is made to the Board, which then refers the request to a referee. ORS 656.283(4). In essence, the referee aids the operation of the Board by conducting an evidentiary hearing and producing an order. Although the Board *may* adopt the referee's order, it is the decision and order of the Board that the Court of Appeals examines. Thus, even though we refer to the Board's function as *de novo* review, it truly is a deciding agency. This referee-Board function in the workers' compensation arena contrasts with the more independent relationship between a referee and the agency in other contexts. *See, e.g.,* ORS 657.270 (Employment Division, not Employment Appeals Board, designates referee to conduct hearing).

stated) shows an erroneous interpretation of a provision of law.

In summary, we do not read ORS 656.298(6) to impose, as a matter of law, a requirement that the Board explain its rejection of a referee's express credibility findings. By failing to address a referee's credibility findings, the Board does not erroneously interpret a provision of law, requiring that the Court of Appeals reverse the Board's order.[7]

*Order Not Supported by Substantial Evidence in the Record*

Claimant next argues that the Court of Appeals should have remanded this case to the Board because the Board "had to explain why it rejected the referee's findings even on issues other than credibility." Claimant invites this court to hold that "a Board order reversing a referee can be sustained under the substantial evidence test only if the Board explains why it has rejected the referee's contrary findings." In failing to remand the case, claimant argues, the Court of Appeals "adopted an overly literal interpretation of the substantial evidence rule."

"Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). Claimant appears to argue that the Board's failure to address the referee's credibility finding, together with the other evidence in the record (contradicting the Board's findings), do not add up to a record that, "viewed as a whole, would permit a reasonable person to make that finding." In essence, claimant asserts that the Board's finding that claimant "failed to

---

[7] We note that the value of a credibility finding varies widely, depending upon the nature of the issue to which it is relevant. In some cases, a finding that one witness is credible necessarily is a finding that another witness is not credible. For example, if "A" testifies that the traffic light was green and "B" testifies that the light was red, a statement by a referee that he finds "B's" testimony credible also is a finding that "A's" testimony is not credible.

But a finding that the testimony of one witness is credible often has no implication for the credibility of other witnesses. A referee's statement that he finds a claimant to be "an honest, credible witness in his own behalf," for example, does not necessarily signify that the referee finds other testimony to be not credible; it simply depends upon the nature of the factual issue to which the testimony relates. In the present case, we assume—but do not decide—that the referee found the testimony of the vocational rehabilitation counselor not to be credible.

cooperate in the development of a return-to-work plan" is not supported by substantial evidence unless the Board explains why it departed from the referee's credibility assessment.

■        This position represents a misunderstanding of an appellate court's scope of review when evaluating the Board's order for substantial evidence. To comply with ORS 183.482(8)(c) (made applicable to judicial review of Board orders by ORS 656.298(6)), an agency order should include findings of fact that support its conclusions of law. *See* ORS 183.470. The Board's findings must, in turn, be supported by substantial evidence. Although the Board should seriously consider the testimony the referee believes to be reliable, the "substantial evidence" standard does not require the Board to adopt the referee's findings or to "explain away" disparities between the Board's and the referee's determinations. *Cf. Garcia v. Boise Cascade Corp.,* 309 Or 292, 296, 787 P2d 884 (1990) ("[t]he appropriate question was not whether substantial evidence supported claimant's claim, but whether substantial evidence supported the referee's decision"). It is adequate for the Board to address the "credibility" issue by clearly setting forth its findings. It is the Court of Appeals' responsibility in this process to ensure that those findings are reasonable in light of the entire record.

*Conclusion and Disposition*

■        Did the Court of Appeals err in finding that the Board's order was supported by substantial evidence and, implicitly, that the Board did not erroneously interpret a provision of law? The Board made the following findings:

> "[T]he vocational counselor attempted to develop a return-to-work plan, but claimant did not maintain contact with her or return her calls. In February 1986, the counselor sent claimant a letter warning him that failure to participate could result in the termination of vocational services. Claimant's attorney replied to the letter, stating that claimant did not understand how vocational services would help him, but that he was willing to cooperate. After this, the counselor attempted to contact claimant on a number of occasions, but received no reply. Vocational assistance was terminated in April 1986 on the ground that claimant had not participated in developing a return-to-work plan. Claimant did not protest or appeal the termination of vocational services."

From these findings and others, the Board concluded that "claimant, in essence, refused vocational assistance and that he has failed to establish that he is willing to seek regular gainful employment or that he has made reasonable efforts to obtain such employment."

The record, viewed as a whole, contains substantial evidence supporting the Board's findings and conclusions and its order followed from its conclusions. ORS 183.482(8)(c). The Court of Appeals applied the correct standard of review in holding that the Board did not err.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is affirmed.