Argued and submitted December 6, 2001, affirmed January 30, 2002

In the Matter of the Compensation of
William L. Gilbert, Claimant.

William L. GILBERT,
*Petitioner,*

*v.*

CAVENHAM FOREST INDUSTRIES DIVISION,
*Respondent.*

99-09439; A112661

39 P3d 883

Richard A. Sly argued the cause and filed the briefs for petitioner.

Karen O'Casey argued the cause for respondent. On the brief were Jean Ohman Back and Schwabe, Williamson & Wyatt, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

The Workers' Compensation Board (Board) rejected claimant's attempt to expand the scope of a previously accepted claim. We affirm.

Claimant first compensably injured his low back working for a previous employer in 1963. Two surgeries, a lumbar laminectomy in 1963 and a lumbar fusion in 1965, alleviated his pain for 15 years, during which he performed unlimited strenuous labor. Then, in January 1980, he fell from a machine at work and again injured his low back. He filed a claim for workers' compensation and ultimately received an award of 62.5 percent unscheduled permanent partial disability.

In the course of diagnosing and treating the 1980 injury with more surgery, claimant had several myelograms, one of which showed some evidence of arachnoiditis, a painful and incurable inflamation of the arachnoid tissue and nerve roots in the spine believed to be caused by injection of dye during diagnostic procedures such as myelograms. Between March 1980 and May 1981, claimant had three more myelograms; only one showed possible mild arachnoiditis. Those early myelograms figure centrally in this case, which involves the question whether later references to claimant's low back condition imply reference to his arachnoiditis.

In 1986, claimant filed a claim for aggravation of his low back condition; that claim was resolved by a stipulation and disputed claim settlement in which the parties agreed that claimant's low back condition remained compensable but that no aggravation had occurred. On orders of his doctor, claimant was briefly hospitalized in April 1987. He filed another aggravation claim. At the hearing on that claim, the sole issue was whether claimant suffered a worsening of his compensable condition. The administrative law judge (ALJ) affirmed employer's denial, and, in lieu of seeking Board review of that opinion, claimant entered into another stipulation and disputed claim settlement with employer, again agreeing that there had been no worsening of the compensable low back condition.

Subsequently, clamant continued to experience pain and numbness in his right leg and was repeatedly hospitalized. He attributed those symptoms to arachnoiditis. In July 1999, he requested that employer amend its acceptance to specifically include arachnoiditis, as well as arthritis, constipation, depression, and elevated blood pressure. Employer denied that request, maintaining that those conditions were not related to the 1980 injury nor to medical treatment for it. The Board affirmed the denial, and claimant now seeks review, contending, first, that employer impliedly accepted his arachnoiditis when it accepted his low back condition in prior litigation; second, that if employer has not already accepted the arachnoiditis, it should do so now because the arachnoiditis was caused by his on-the-job injury in 1980; and, third, that employer should now also accept his constipation, depression, arthritis, and elevated blood pressure as compensable conditions.

■      Claimant first argues that the stipulation and disputed claim settlements from 1986 and 1988 constitute an acceptance of a generic "compensable low back condition," including arachnoiditis. The scope of an acceptance is a matter of fact that we will affirm if it is supported by substantial evidence. *SAIF v. Dobbs*, 172 Or App 446, 451, 19 P3d 932 (2001); *Freightliner Corp. v. Christensen*, 163 Or App 191, 194, 986 P2d 1263 (1999). The inquiry in this case is complicated by the fact that there is no written acceptance; therefore, determining the scope of acceptance requires examination of the medical records contemporaneous with the injury to determine what the parties contemplated by the use of the term "compensable low back condition." That approach is consistent with the Board's practice when an acceptance does not list specific conditions. *See Fred L. Dobbs*, 50 Van Natta 2293, 2295 (1998), *aff'd SAIF v. Dobbs*, 172 Or App 446, 19 P3d 932 (2001).

■      The ALJ, after reviewing the complete record, acknowledged that two myelograms indicated the presence of arachnoiditis along with other low back symptoms, but he also noted that none of the doctors whose testimony led to the settlement identified arachnoiditis as a cause of claimant's low back condition. Rather, the medical evidence indicated that the condition resulted from such causes as chronic lumbosacral strain, herniated disks, earlier surgeries unrelated

to the 1980 accident, and "severe functional overlay." Based on that evidence, the ALJ found that arachnoiditis was not part of the low back condition that employer accepted. The Board adopted the ALJ's finding. It is supported by substantial evidence. We therefore will not disturb the Board's decision that the settlements did not impliedly include claimant's arachnoiditis.[1]

In a related argument, claimant contends that under the rule announced by the Supreme Court in *Georgia-Pacific v. Piwowar*, 305 Or 494, 753 P2d 948 (1988), employer may not deny the compensability of the arachnoiditis. We disagree. *Piwowar* stands for the proposition that an employer may not deny the compensability of a preexisting disease or condition that is the medical cause of an accepted symptom or condition, even if that preexisting disease or condition is not itself compensable. *Id.* at 501; *Hill v. Qwest*, 178 Or App 137, 140-41, 35 P3d 10451 (2001). *Piwowar*, therefore, does not apply to the facts here, because the ALJ found that arachnoiditis was not related to claimant's current low back condition and, as noted, that finding is supported by substantial evidence.

██ ██ Another variation of claimant's first argument, equally unavailing, relies on issue preclusion. Claimant contends that, throughout the hearing in 1987 and the settlement negotiations, the parties assumed that arachnoiditis was a component of claimant's compensable low back condition, so that employer is now precluded from rearguing that issue. However, the parties' assumptions are not evident from the record, and even if they did assume the compensability of arachnoiditis in the 1987 proceeding, issue preclusion requires more than an assumption; the issue must be actually litigated and determination of the issue must be essential to the final decision. *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990). Claimant argues that the

---

[1] If we were to consider the stipulation and disputed claim settlements to be contracts, *see Trevitts v. Hoffman-Marmolejo*, 138 Or App 455, 459, 909 P2d 187 (1996) (claims disposition agreement construed as contract), we would reach the same conclusion. The key term, "compensable low back condition," is ambiguous; therefore, under the interpretative method dictated by *Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997), we would turn to extrinsic evidence of the parties' intent, namely, the same contemporaneous medical evidence the ALJ considered. That evidence defeats claimant's argument that arachnoiditis was part of the accepted claim.

ALJ's 1987 determination that the low back condition and assumed arachnoiditis had not worsened was necessarily based on a prior (albeit tacit) determination that the condition and assumed arachnoiditis were compensable. At the time, however, aggravation claims were determined according to a two-part inquiry:

> "In order to prevail on an aggravation claim under the statute, a worker must show (1) a worsening of the compensable condition since the last award or arrangement of compensation and (2) a causal connection between the worsening and the compensable condition." *Stepp v. SAIF*, 78 Or App 438, 441, 717 P2d 216 (1986), *aff'd* 304 Or 375, 745 P2d 1207 (1987).

The second step of that two-part inquiry, compensability, was not at issue in the 1987 hearing. As memorialized by the ALJ, the sole issue was whether claimant's condition had worsened since the last arrangement of compensation in 1986. Claimant concedes as much in his brief, noting that at the time of the 1987 hearing, " 'compensability' of [the] condition was not in issue * * *. The only issue then was whether an aggravation of [the] condition had occurred." Accordingly, having concluded that the condition had not worsened, the ALJ was not required to proceed further and, in fact, did not decide compensability. The issue of compensability was neither actually litigated nor necessarily determined in the 1987 proceeding.

The same conclusion applies to the stipulation and disputed claim settlement of 1988. The parties agreed that claimant's condition had not worsened and that it remained compensable. They did not agree that claimant's arachnoiditis was compensable or that it was related to his low back condition. Thus, we agree with the Board that the settlement did not actually litigate and determine the compensability of the arachnoiditis condition. Issue preclusion does not bar employer from raising that issue in this proceeding.

To summarize: Employer's acceptance of a low back condition did not impliedly include acceptance of arachnoiditis. Nor did acceptance of the low back condition include

acceptance of arachnoiditis by operation of the *Piwowar* principle, *i.e.*, that acceptance of a symptom or condition automatically includes acceptance of a disease causing it. Nor did the earlier settlement agreements or the hearing actually and necessarily determine that claimant's arachnoiditis was a compensable condition and thereby bar litigation of that issue here. The Board did not err in reaching the merits.

In addressing the merits, the Board reviewed four medical opinions and concluded that claimant's arachnoiditis is not compensable. Substantial evidence supports that conclusion. Substantial evidence also supports the Board's conclusion that claimant's constipation, depression, arthritis, and elevated blood pressure are not compensable. No discussion of those conclusions is necessary.

Affirmed.