Argued and submitted June 20, affirmed July 19, 2006

## CENTURY PROPERTIES, LLC,
*Petitioner,*

*v.*

## CITY OF CORVALLIS,
*Respondent.*

2005-004, 2005-005, 2005-006, 2005-007, 2005-008,
2005-009, 2005-010, 2005-011, 2005-012, 2005-013,
2005-014, 2005-015, 2005-016, 2005-017;
A132090

139 P3d 990

James K. Brewer argued the cause for respondent. With him on the brief was Fewel, Brewer & Coulombe, Corvallis City Attorneys.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

LANDAU, P. J.

---

* Schuman, J., *vice* Ceniceros, S. J.

## LANDAU, P. J.

Petitioner seeks judicial review of a final opinion and order of the Land Use Board of Appeals (LUBA), which concluded that petitioner lacked statutory standing to appeal certain ordinances that the City of Corvallis (city) had adopted as part of its periodic review process. The city moves to dismiss the judicial review for want of constitutional standing. We deny the motion to dismiss and affirm.

The relevant facts are few and undisputed. The city began its periodic review of its comprehensive plan and land use amendments in 1996. In 2000, the Department of Land Conservation and Development approved a series of completed work tasks and added several others to the city's work program. Among those new work tasks were those referred to as the "Natural Features Project."

From early 2001 to mid-2004, the city held approximately 50 public meetings, work sessions, and workshops as part of the Natural Features Project. The city then proposed a number of ordinances and, beginning in September 2004, began holding public hearings on those proposed ordinances.

On November 4, 2004, petitioner's counsel sent a letter to the city that read, in its entirety:

> "Please accept this letter as an appearance by my client, Century Properties LLC, in each of these proceedings, including in the proceeding related to any ordinance or order that emerges from these proceedings.

> "I would also like to be put on the notice list for any notice of adoption of any ordinance, resolution or order that results from these proceedings, as well as any individual notices of further related proceedings that may be sent by the City.

> "Thank you for your consideration."

Petitioner did not submit any other documents to the proceedings. Petitioner did not testify. Nor did petitioner take any position for or against any of the ordinances that were the subject of the public hearings.

On December 13, 2004, the city adopted 14 ordinances, each addressing a different portion of the Natural

Features Project. Shortly thereafter, petitioner appealed to LUBA each of the 14 ordinances.

The city responded with a motion to dismiss for lack of statutory standing to appeal to LUBA. The city relied on ORS 197.620(1), which permits only "persons who participated either orally or in writing in the local government proceedings" to appeal a post-acknowledgment plan amendment to LUBA. According to the city, petitioner had not "participated" in any of the public proceedings that had occurred in the years leading up to the adoption of the 14 challenged ordinances.

Petitioner responded that it had "participated" in the city's Natural Features Project proceedings by filing an "appearance." According to petitioner, the statute does not require more to constitute "participat[ion]" sufficient to confer statutory standing to appeal to LUBA.

LUBA rejected petitioner's argument and dismissed the appeal. In a detailed and carefully reasoned opinion, LUBA concluded that, in authorizing persons who "participated" in the local government proceeding to appeal, the legislature intended to limit such appeals to persons who asserted a position on the merits of the issues before the local government.

On review, petitioner contends that LUBA erred in concluding that the statutory term "participated" refers to anything more than making an appearance. Petitioner argues that a close examination of the history of changes in the statute makes clear that the legislature intended to "lower the bar" and permit any person who merely filed an appearance before the local government to appeal to LUBA the local government's post-acknowledgment plan amendments.

■ The city responds first by moving to dismiss this review for want of constitutional standing. The city argues that nothing in the record demonstrates that a decision by this court will have a practical effect on petitioner. Petitioner responds that it has established the requisite practical effect by way of an affidavit from one of its representatives stating that petitioner owns approximately 9.5 acres of commercial

property located within the city limits and that the city's ordinances will adversely affect petitioner's ability to develop that property.

As for the merits of petitioner's argument, the city responds that there is nothing in the text, context, or legislative history of ORS 197.620(1) that suggests that the legislature intended the term "participate[ ]" to mean anything other than what it ordinarily means, which requires more than merely filing an appearance.

We begin with the city's motion to dismiss, because it concerns the justiciability of the petition. *See Strunk v. PERB*, 338 Or 145, 153, 108 P3d 1058 (2005) (standing "is an aspect of justiciability"). To invoke the authority of the courts, a party must establish that a decision of the court will have a "practical effect" on the rights of that party. *Id.* In this case, petitioner has averred that it owns commercial property within the city limits and that its ability to develop that property will be adversely affected by the challenged ordinances. That is sufficient to establish the requisite practical effects. *See Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 91 P3d 748 (2004) (allegation that petitioners own land that will be adversely affected by challenged land exchange is sufficient to establish practical effects). We deny the city's motion without further discussion and turn to the merits.

The crux of the dispute between the parties is the meaning of the term "participate[ ]" as it is employed in ORS 197.620(1). Resolution of that dispute is governed by application of the interpretive principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with an examination of the text in context and, if necessary, proceed to an examination of the legislative history and application of relevant canons of statutory construction. *Id.*

ORS 197.620(1) provides:

"Notwithstanding the requirements of ORS 197.830(2), persons who participated either orally or in writing in the local government proceedings leading to the adoption of an amendment to an acknowledged comprehensive plan or

land use regulation or a new land use regulation may appeal the decision to the Land Use Board of Appeals[.]"

The cross-referenced statute, ORS 197.830(2), provides that,

"[e]xcept as provided in ORS 197.620(1) * * *, a person may petition the board for review of a land use decision or limited land use decision if the person:

"(a)   Filed a notice of intent to appeal the decision * * *; and

"(b)   Appeared before the local government, special district or state agency orally or in writing."

The statutes together describe the requirements for appealing certain decisions to LUBA. ORS 197.830(2) describes the requirements for appealing land use decisions and limited land use decisions. To appeal those decisions, a person must have "[a]ppeared" before the agency that made the challenged decision. In contrast, ORS 197.620(1) describes the requirements for appealing a particular type of decision, namely, an amendment to an acknowledged comprehensive plan or land use regulation or a new land use regulation. To appeal that kind of decision, a person must have "participated" in the proceedings leading up to it.

■      The distinction is significant. Ordinarily, we assume that, when the legislature employs different terms in a statute, the legislature intended those terms to have independent significance. *See, e.g., State v. Glaspey,* 337 Or 558, 564-65, 100 P3d 730 (2004) (legislative's use of different terms in same statute suggested terms have different meaning). In this case, the legislature appears to have drawn a distinction between "appearing" before an agency and actually "participating" in the agency's proceedings.

That assumption appears to be supported by the ordinary meaning of each of the two terms. To "appear" ordinarily means, at least in the sense that is relevant here, "to come formally before an authoritative body * * * to present oneself formally as plaintiff, defendant, or counsel." *Webster's Third New Int'l Dictionary* 103 (unabridged ed 2002). Consistent with that ordinary meaning, in legal terminology, to make an "appearance" means merely "coming into court[.]" *Black's Law Dictionary* 89 (5th ed 1979). To "participate," on

the other hand, ordinarily means "to take part in something (as an enterprise or activity) usu. in common with others[.]" *Webster's* at 1646. Likewise, in legal terminology, it has a more active connotation, meaning "[t]o receive or have a part or share of; to partake of; experience in common with others; to have or enjoy a part or share in common with others. To partake, as to 'participate' in a discussion, or in a pension or profit sharing plan." *Black's* at 1007. Thus, the ordinary meanings of the terms suggest that a person could "appear" in an action without actually "participating" in it.

That the legislature intended there to be a distinction between merely "appearing" and actually "participating" may be confirmed by reference to previous versions of the same statutes. *See Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) ("[W]ording changes adopted from session to session are a part of context of the present version of the statute being construed."); *see also Nibler v. Dept. of Transportation*, 338 Or 19, 22, 105 P3d 360 (2005) (same).

The genesis of what is now ORS 197.830(2) traces back to 1979 legislation that created LUBA itself. Or Laws 1979, ch 772. Among other things, that legislation authorized certain persons to appeal land use decisions to LUBA. It divided the appealable land use decisions into two categories—legislative and quasi-judicial—and then imposed different standing requirements for appealing each category. To appeal a legislative land use decision to LUBA, the 1979 legislation required a person to be "adversely affected" or "aggrieved" by the decision to be appealed. Or Laws 1979, ch 772, § 4(2). To appeal a quasi-judicial land use decision, the 1979 legislation required a person to have "appeared" before the city, county, governing body, or state agency that made the decision and *either* be legally entitled to "notice and hearing" *or* be adversely affected or aggrieved by the decision to be appealed. Or Laws 1979, ch 772, § 4(3).

In 1981, the legislature first enacted the statute that would ultimately be codified at ORS 197.620(1). Or Laws 1981, ch 748. The 1981 legislation set out the procedures for amending acknowledged comprehensive plans and land use regulations or adopting new land use regulations and, among

other things, created the procedures for appealing those decisions. As originally enacted, the 1981 legislation provided that "[p]ersons who participated either orally or in writing" in the initial proceeding could appeal to the director of the Department of Land Conservation and Development. Or Laws 1981, ch 748, § 5a(1)(a). The legislation then provided something of an exception to that statutory standing requirement; it provided that the director of the department could accept an appeal from a person who had not participated as long as the person was adversely affected or aggrieved by the decision and "[h]as demonstrated good cause why that person did not participate either orally or in writing in the local government proceedings[.]" Or Laws 1981, ch 748, § 5a(1)(b). The 1981 legislation further provided, in effect, a preservation of error provision—that is, unless the final decision differs from the initial proposal to such a degree that the notice of the original proposal did not provide reasonable notice, no one "may appeal on grounds which that party did not raise in the local government proceedings leading to the final adoption." Or Laws 1981, ch 748, § 5a(4)(a).

Thus, the 1981 legislation introduced the idea that, to appeal post-acknowledgment plan amendments and related decisions, a person must have "participated" in the local government proceeding. It further made clear that that "participation" meant more than just making an appearance. The preservation of error provision, in particular, confirmed that the participation necessary to an appeal included articulating grounds for objecting to the challenged decision.

The legislature revised that statute in 1983. Or Laws 1983, ch 827. First, the 1983 legislation provided for appeals of post-acknowledgment plan amendments and related decisions to LUBA, instead of to the director. Or Laws 1983, ch 827, § 8(1). Second, it eliminated the preservation of error provision—that is, under the 1983 amendments a person appealing post-acknowledgment plan amendments and related decisions to LUBA was not limited to issues that had been raised by that person during the local government proceedings. Or Laws 1983, ch 827, § 8. The 1983 amendments, however, left untouched the requirement that a person appealing must have "participated" in the local government proceeding.

In 1989, the legislature amended the statutes pertaining to appeal of legislative and quasi-judicial land use decisions to LUBA that were enacted in 1979. Or Laws 1989, ch 761. The legislature eliminated the different statutory standing requirements for appeals of legislative and quasi-judicial land use decisions to LUBA and substituted a single requirement that the person must have "appeared" during the local proceedings. Or Laws 1989, ch 761, § 12. Those changes applied only to appeals of land use and limited land use decisions, however. The legislature left intact the requirement that persons appealing post-acknowledgment plan amendments and related decisions must have "participated" in the local government proceeding.

The foregoing series of amendments to ORS 197.830(2) and ORS 197.620(1) strongly support what we have identified as the meaning of the statutes based on an examination of the words themselves.

First, when the legislature enacted in 1981 the legislation that is now codified at ORS 197.620(1), it is clear that, in requiring persons appealing post-acknowledgment plan amendments and related decisions to LUBA to have "participated" in the local government proceedings, the legislature intended that the persons have done more than make a mere appearance. On that much, all parties agree.

Second, the series of amendments to the statutes suggests that the legislature understands there to be a difference between requiring that persons have "participated" in a local government proceeding and requiring that they have merely "appeared" in such proceedings. In its 1989 amendments, the legislature altered the standing requirements for what once had been referred to as legislative and quasi-judicial land use decisions so that the law now requires only that the person appealing have "appeared" in the local government proceeding. The legislature left untouched the standing requirement for appeal of post-acknowledgment plan amendments and related decisions—that is, that the person appealing have "participated" in the local government proceeding.

Petitioner nevertheless insists that we should read the requirement that an appellant have "participated" in a

local government proceeding to be the "fungible equivalent" of the requirement that an appellant have merely "appeared" in such a proceeding. In other words, petitioner argues, by merely filing an appearance in the city's Natural Features Project proceedings, it "participated" in those proceedings within the meaning of ORS 197.620(1).

Petitioner acknowledges that, *as originally enacted*, ORS 197.620(1) was intended to require that appellants have "participated" in the usual, more active sense of actually being involved in the proceedings and taking positions on the issues. According to petitioner, that original meaning implicitly changed when the legislature enacted the 1983 amendments to ORS 197.620(1). Again, petitioner acknowledges that the legislature actually did not alter the requirement in ORS 197.620(1) that appellants have "participated" in the local government proceeding at issue. Petitioner's argument is that, by amending the preservation requirement, which permitted appellants to raise on appeal only issues that they already had raised in the local government proceeding, the legislature implicitly "lowered the bar" and altered the meaning of the balance of the statute. Petitioner suggests that a legislative alteration of the context of the statute, in other words, necessarily altered the meaning of the unchanged text.

We are not persuaded by petitioner's argument. To begin with, as we have noted, the legislature left unaltered the requirement in ORS 197.620(1) that appellants have "participated." Indeed, it left that requirement unaltered when it changed the statutory standing requirements in other, related statutes. That, as we have noted, strongly suggests that, in retaining the requirement that appellants have "participated," the legislature did so intentionally. In that light, we are reluctant to regard the legislature's decision to retain the requirement as a nullity.

We are aware of one case, *Holcomb v. Sunderland*, 321 Or 99, 894 P2d 457 (1995), in which the Oregon Supreme Court has held that legislative alteration of statutory context can affect the meaning of other, unaltered text. In that case, however, the court emphasized that the altered context had been "essential" to its prior construction of the statute at

issue. *Id.* at 105. After the legislature changed the context, the court's prior construction of the statute was no longer tenable. *Id.*

The same cannot be said of the amendments to ORS 197.620(1). The preservation of error provision that was part of the original legislation certainly confirmed what the ordinary meaning of the text of the statute suggested. But the amendment of that requirement in 1983 in no way rendered untenable that the participation requirement continues to mean what even petitioner agrees the legislature originally intended it to mean.

In summary, based on our review of the text of ORS 197.620(1) in context, we conclude that, in permitting only persons who "participated" in local government proceedings to appeal post-acknowledgment plan amendments and related decisions to LUBA, the statute requires more than merely making an appearance. In this case, petitioner did no more than make a mere appearance. As LUBA correctly concluded, that was not sufficient to satisfy the statutory standing requirement of ORS 197.620(1).

Affirmed.